# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BETH ANN CULVER,**

          **Plaintiff,**

          v.                                               Case No. 19-CV-1810

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

          **Defendant.**

# DECISION AND ORDER

## 1. Introduction

Alleging she has been disabled since June 28, 2016 (Tr. 15), Beth Ann Culver seeks disability insurance benefits and supplemental security income. After her application was denied initially (Tr. 76-99) and upon reconsideration (Tr. 100-31), a hearing was held before an administrative law judge (ALJ) on November 7, 2018 (Tr. 33-75). On January 23, 2019, the ALJ issued a written decision concluding that Culver was not disabled. (Tr. 13-26.) After the Appeals Council denied Culver's request for review on October 17, 2019 (Tr. 1-6), she filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 6, 8), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that "[t]he claimant has not engaged in substantial gainful activity since June 28, 2016, the alleged onset date." (Tr. 15.) Culver was insured through December 31, 2017. (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Culver has the following severe impairments: "residuals of ovarian cancer, status-post residuals of multiple organ repair surgeries, degenerative disc disease of the lumbar spine, vision disorder, depressive disorder, and an anxiety disorder." (Tr. 15.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-

month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 16.) The ALJ considered listing sections 1.04, 2.02, 2.03, 2.04, 12.04, 12.06, and 13.23.

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Culver has the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: she is unable to climb ladders ropes or scaffolds. She can occasionally climb ramps and stairs. She can occasionally balance, stoop, kneel crouch and crawl. She can occasionally use depth perception. She must avoid all exposure to hazards such as unprotected heights and dangerous moving machinery. Mentally, the claimant is limited to simple and routine tasks.

(Tr. 18.)

3

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Culver had no past relevant work. (Tr. 24.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 24.) Specifically, relying on the testimony of a vocational expert, the ALJ identified jobs as a counter attendant, interviewer, or information clerk. (Tr. 24-25.) Therefore, Culver was not disabled.

3. **Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v.*

*Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

4. **Analysis**

   4.1. **Mental Impairments**

Culver contends that "[t]here is overwhelming evidence in the record that Plaintiff would be unable to sustain the functional activities required of her at work on a full time basis, no matter how 'simple' and 'routine' the job." (ECF No. 14 at 9-10.) She argues that the ALJ's use of "the vague language of 'unskilled work' in his hypothetical to the vocational expert … failed to account for his moderate limitations in concentration, persistence, and pace." (ECF No. 14 at 11.)

The ALJ concluded that Culver had moderate limitations in concentration, persistence, and pace. (Tr. 17, 20.) The ALJ, however, did not refer to any such limitation in the hypotheticals he posed to the vocational expert or in his RFC finding. Although an ALJ is not required to use the specific words "concentration, persistence, and pace," he

5

must nonetheless present a hypothetical to the vocational expert that fully accounts for the claimant's limitations. *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019).

The ALJ asked the vocational expert to consider a person who was limited to "simple, routine tasks, simple work-related decisions, and [where] the person can adapt to changes within a routine work setting." (Tr. 68.) Similarly, in his RFC finding the ALJ said, "Due to the claimant's continued reports of symptoms of depression and anxiety and resulting moderate 'paragraph B' limitations in understanding, remembering, or applying information, concentration, persistence or pace, and adaptation, the undersigned limits the claimant to performing tasks that are simple and routine." (Tr. 20.)

Limiting Culver to simple and routine tasks did not adequately account for her moderate limitation in concentration and especially persistence and pace. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Jobs might be simple and routine yet require the worker to pay attention to detail, perform consistently throughout the workday, or meet productivity standards. *See Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift"); *see also Doremus v. Saul*, No. 1:19-CV-046-JEM, 2020 U.S. Dist. LEXIS 37770, at *6-7 (N.D. Ind. Mar. 4, 2020).

A review of the descriptions of the jobs identified by the vocational expert serves to underscore how a limitation to simple and routine work might not account for a person's moderate limitation in concentration, persistence, or pace. The first job the vocational expert identified was that of a "counter attendant." This job has the code of 311.477-014 in the Dictionary of Occupational Titles (DOT). Although the vocational expert identified it as sedentary, the DOT characterizes it as light. And its description certainly does not sound sedentary:

> Serves food or beverages to customers seated at counter: Calls order to kitchen and picks up and serves order when it is ready. Itemizes and totals check for service or totals takeout transaction on cash register and accepts payment. May prepare sandwiches, salads, and other short order items [COOK, SHORT ORDER (hotel & rest.) 313.374-014]. May perform other duties, such as cleaning counters, washing dishes, and selling cigars and cigarettes.

The other two jobs identified by the vocational expert reflect the antiquated nature of the DOT in that both would seem to have been supplanted with the internet and automation. The vocational expert identified the position of "interviewer" under DOT Code 205.367-014. This coincides with the following DOT listing:

> CHARGE-ACCOUNT CLERK (clerical) alternate titles: credit-card interviewer; new-account interviewer
>
> Interviews customers applying for charge accounts: Confers with customer to explain type of charge plans available. Assists customer in filling out application or completes application for customer. Reviews applications received by mail. Files credit applications after credit department approves or disapproves credit. May check references by phone or form letter and notify customer of acceptance or rejection of credit [CREDIT CLERK (clerical)]. May verify entries and correct errors on charge accounts

7

[CUSTOMER-COMPLAINT CLERK (clerical)], using adding machine. May answer credit rating requests from banks and credit bureaus. May issue temporary shopping slip when credit references appear satisfactory.

The ALJ also identified the position of "information clerk" under DOT Code 237.367-046. This corresponds with the following DOT listing:

TELEPHONE QUOTATION CLERK (financial) alternate titles: information clerk, brokerage; quote clerk; telephone-information clerk

Answers telephone calls from customers requesting current stock quotations and provides information posted on electronic quote board. Relays calls to REGISTERED REPRESENTATIVE (financial) 250.257-018 as requested by customer. May call customers to inform them of stock quotations.

In a time when a person's smartphone provides access to real time stock quotes in fewer taps than are required to enter a phone number, it is hard to imagine that there are still over 50,000 unskilled workers in the United States who orally relate stock quotes to callers. Similarly, when credit applications are now online forms and the review process largely automated, it is hard to credit the vocational expert's testimony that there remain 30,000 unskilled workers who manually assist customers in completing credit applications and review those applications. But setting aside the seemingly antiquated nature of these jobs, it is sufficient for present purposes to note that each of these positions, although perhaps simple and routine, would appear to require a high degree of concentration, persistence, and pace. A "counter attendant" will surely be expected to serve customers quickly and efficiently. Similarly, an "information clerk" who cannot promptly answer calls and quickly provide the requested information likely will not be

8

employed in the position long. And an "interviewer" most likely will have efficiency and productivity goals to maintain.

In light of the ALJ's explicit finding that Culver had moderate limitations in concentration, persistence, and pace, it was necessary to account for those limitations in the RFC finding. Limiting Culver to tasks that are simple and routine was insufficient. The error was not harmless given that the representative jobs identified by the vocational expert appear inconsistent with a moderate limitation in concentration, persistence, and pace. While the court's suspicions as to the nature of the jobs prevent it from finding that the ALJ's omission was harmless, the actual nature of these jobs is a matter for the vocational expert. Therefore, remand is required.

**4.2. Symptom Severity**

Culver asserts, "The ALJ's determination that Plaintiff's statements about the intensity of her symptoms are inconsistent with the medical record (R. 21) is premised upon improper inferences and skewed representations of the evidence." (ECF No. 14 at 12.)

"In determining whether an individual is disabled, [the ALJ must] consider all of the individual's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." SSR 16-3p. The ALJ must assess the individual's symptoms—*i.e.*, "the individual's own description or statement of his or her physical or mental

9

impairment(s)"—using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities …." SSR 16-3p. In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

    1. Daily activities;

    2. The location, duration, frequency, and intensity of pain or other symptoms;

    3. Factors that precipitate and aggravate the symptoms;

    4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

    5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

    6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

    7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. Although the court is not assessing the claimant's character or truthfulness, SSR 16-3p, this evaluation was previously characterized as a "credibility" assessment, *see* SSR 96-7p, and that language persists in the caselaw. *See, e.g.*, *Hinds v. Saul*, 799 F. App'x 396, 400 (7th Cir. 2020); *Brian J. v. Saul*, 438 F. Supp. 3d 903, 908 (N.D. Ill. 2020). The ALJ's conclusion is entitled to "special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017).

The ALJ's discussion of Culver's RFC began with a general summary of her symptoms. (Tr. 18-20.) The ALJ did not connect this summary to any conclusion. Thus, this portion of the decision did not satisfy the ALJ's obligation to provide specific reasons for his RFC finding. *See Krevs v. Saul*, No. 18-CV-1742, 2020 U.S. Dist. LEXIS 1236, at *6-7 (E.D. Wis. Jan. 6, 2020).

Later, the ALJ provided specific reasons for discounting Culver's subjective complaints regarding her pain, including that her treatment was conservative, consisting of medication and physical therapy, examinations generally noted only "mild discomfort," she met her physical therapy goals, and upon discharge reported only mild

11

symptoms, had a full range of motion in her lumbar spine, was able to lift 25 pounds, and was able to complete her activities of daily living (Tr. 21.) She reported that medications addressed her abdominal pain, and an MRI revealed only mild impairment without any aggravating factors. (Tr. 21.) During a consultative examination she exhibited normal functioning in her legs, along with a normal gait without pain. (Tr. 21.) "Thus, the claimant's good response to medication combined with good physical functioning and absence of significant diagnostic testing findings suggest the claimant can perform sedentary exertional work with the above-assigned postural limitations outlined above." (Tr. 22.)

Culver argues that the ALJ mischaracterized the results of the consultative examination, overlooking that she was unable to complete much of the examination because of abdominal pain. (ECF No. 14 at 13.) But, contrary to Culver's assertion, the ALJ did not characterize the consultative examination as finding Culver to be unimpaired. The ALJ noted simply that, as to certain aspects of Culver's functioning that the examiner was able to evaluate, the examiner's assessment was inconsistent with severe back pain and the related limitations that Culver claimed. The fact that Culver reported being unable to perform much of the examination because of abdominal pain did not negate the value of the examination insofar as it was intended as an assessment of Culver's back pain. Thus, the court finds no error on this point.

Nor did the ALJ err in noting that Culver's back problems were treated relatively conservatively with medication and physical therapy. Culver argues that, given her experience of feeling "butchered" and "hacked" following her abdominal surgery, it should be obvious that she would not want to undergo additional surgery. (ECF No. 14 at 12.) But the relevant point is that surgery had not been recommended. It was unnecessary for the ALJ to consider reasons why Culver may have been reluctant to undergo additional treatment when there is no evidence that such additional treatment was recommended or medically appropriate.

And while ALJs commonly err by appearing to equate symptom improvement with the elimination of symptoms, *see, e.g.*, *Ivy-Covington v. Saul*, No. 19-CV-213, 2020 U.S. Dist. LEXIS 39844, at *11 (E.D. Wis. Mar. 9, 2020) (quoting *Herron v. Colvin*, No. 14-CV-56, 2014 U.S. Dist. LEXIS 161947, at *18 (E.D. Wis. Nov. 19, 2014)), the ALJ did not slip into this trap here (*cf.* ECF No. 14 at 12 (Culver arguing, "The ALJ's equating of being 'better' with medication with the notion that Plaintiff has successfully overcome a chronic widespread pain is off the mark.")). Rather, the ALJ appropriately noted that the *degree* of improvement that Culver received from medication tended to suggest that her symptoms were not as severe as she alleged.

The MRI, although predating the alleged onset date, was relevant to assessing the severity of Culver's symptoms. Notwithstanding the dismissive tone of Culver's argument (ECF No. 14 at 13 ("as if [the mild degenerative changes] somehow addresses

the issue of her combined back and abdominal pain after numerous traumatic surgeries")), such evidence is an appropriate factor for concluding that a claimant's symptoms are not as severe as alleged, *see* SSR 16-3p.

Thus, the ALJ did not err in assessing Culver's back pain. However, the court does find that the ALJ generally failed to discuss the severity of Culver's abdominal pain. As reflected above, the ALJ's discussion of the severity of Culver's physical symptoms tended to relate to her back pain. But it is her abdominal pain that seems to have had the most effect on her ability to work. Although this shortcoming in the ALJ's discussion might not have independently merited remand, the court notes it to ensure thorough review on remand.

As for Culver's mental health symptoms, the ALJ noted that she required minimal treatment, consisting of just four months of seeing a therapist. (Tr. 22.) During appointments she exhibited mild symptoms. (Tr. 22.) Following the stint with the therapist, Culver's treatment consisted only of medications prescribed by her primary care physician. (Tr. 22.) She responded well to the medication. (Tr. 22.) The ALJ concluded, "In light of the claimant's minimal need for treatment, normal mental functioning demonstrated on mental status evaluation, and good response to medication, a limitation for simple and routine instructions reasonably provides for the claimant's subjective difficulties in understanding, remembering, or applying information, concentration, persistence or pace and adaptation." (Tr. 22.)

Culver asserts that the ALJ erred because "[h]e failed to mention that the therapist was far away, and Plaintiff was having a difficult time getting in to see a psychologist closer to home." (ECF No. 14 at 14.)

Insofar as the ALJ's reference to Culver having received only four months of therapy might reflect a conclusion that Culver did not require additional therapy, such a conclusion would be erroneous. Culver testified that she discontinued therapy only because the hour drive to her therapist was too stressful. (Tr. 52.) She had been trying to get care closer to her home, but every time she tried she was told that the provider was not taking patients with her insurance. (Tr. 52.) With the help of her insurance company, she recently was put back on track to being able to see a therapist. (Tr. 52.)

But the court does not understand the ALJ to have been saying that Culver needed only four months of therapy. Rather, the ALJ was noting only that, in the absence of any additional therapy, Culver did not appear to have serious symptoms. Moreover, in noting Culver's observed symptoms and that the medications prescribed by her primary care physician were helpful, the ALJ was not suggesting that Culver was unimpaired. Rather, the ALJ was explaining only why he concluded that Culver's symptoms were not as serious as she alleged. In this respect, the ALJ complied with his obligation to provide specific reasons, consistent with and supported by the evidence, for the weight given to Culver's reported symptoms.

**4.3. Treating Source Opinion**

Culver argues that the ALJ erred in the weight he afforded the opinion of her primary care physician, Dr. Bharathi Pulla. (ECF No. 14 at 15.) The ALJ gave Pulla's opinions "limited weight." (Tr. 23.) In doing so, he noted that Pulla's treatment notes did not reflect the sorts of debilitating symptoms identified in her Physical Residual Function Capacity Statement (Tr. 676). (Tr. 23.) The ALJ also noted specific treatment notes from other providers that were inconsistent with Pulla's opinions. (Tr. 23.) "For example, physical therapy records showed the claimant could lift 25 pounds and demonstrated full range of motion of the lumbar spine, she reported her pain levels as only a three often upon competing physical therapy, MRI studies found no spondylolisthesis or spondylolysis, no significant canal compromise, and no nerve root encroachment of the lumbar spine, and she exhibited no difficulties with her gait, and her pain is controlled with medication." (Tr. 23.) The ALJ also found that Pulla's opinions regarding Culver's mental functioning "are internally inconsistent as well as inconsistent with other records Dr. Pulla indicated that were reviewed. Moreover, Dr. Pulla is a primary care physician and not a mental health specialist, and thus the opinions concerning the claimant's mental capacity are outside Dr. Pulla's range of expertise." (Tr. 23.)

"Under 20 C.F.R. § 404.1527(c)(2), a treating source's opinion should receive controlling weight if it is well supported by medically acceptable clinical techniques and not inconsistent with other substantial evidence in the record." *Stepp v. Colvin*, 795 F.3d

711, 719 (7th Cir. 2015). "In weighing a treating physician's opinion, an ALJ must consider the factors found in 20 C.F.R. § 416.927(c), but need only 'minimally articulate' his reasoning; the ALJ need not explicitly discuss and weigh each factor." *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (citing *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008)). The court will "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp*, 795 F.3d at 718 (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)).

Culver has not shown that the ALJ's assessment of Pulla's opinion was patently erroneous. The ALJ's explanation was sufficient to sustain his conclusion, and Culver has not shown that it was based on an error of law.

## 5. Conclusion

Limiting Culver to simple and routine tasks did not adequately account for her moderate limitation in concentration, and especially persistence and pace. Because the ALJ failed to account for these limitations in his RFC finding and the hypotheticals he presented to the vocational expert, remand is required. The ALJ must also reassess the alleged severity of Culver's abdominal pain. However, the ALJ appropriately assessed the severity of the symptoms that Culver attributed to her back pain and mental impairments. Finally, the ALJ appropriately considered the opinion of Culver's primary care physician.

A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 13th day of July, 2021.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge